IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAGNER BAPTISTE, M.D., | CIVIL NO. 22-00210 JAO-KJM |
| Plaintiff, | ORDER (1) GRANTING THE QUEEN'S HEALTH SYSTEMS, |
| vs. | INC.'S MOTION TO DISMISS COMPLAINT AND (2) GRANTING |
| DEPARTMENT OF DEFENSE; JERRI CURTIS, M.D.; HAWAII HEALTH SYSTEM CORPORATION; QUEEN'S HEALTH SYSTEMS, INC.; LYRIC SANTIAGO, M.D.; DAN BRINKMAN, | HAWAII HEALTH SYSTEM CORPORATION, LYRIC SANTIAGO, M.D., AND DAN BRINKMAN'S MOTION TO DISMISS COMPLAINT |
| Defendants. | |

**ORDER (1) GRANTING THE QUEEN'S HEALTH SYSTEMS, INC.'S MOTION TO DISMISS COMPLAINT AND (2) GRANTING HAWAII HEALTH SYSTEM CORPORATION, LYRIC SANTIAGO, M.D., AND DAN BRINKMAN'S MOTION TO DISMISS COMPLAINT**

In this action, Plaintiff Wagner Baptiste ("Plaintiff") challenges actions allegedly taken by Defendants Department of Defense ("DOD"); Jerri Curtis, M.D. ("Curtis"); Hawaii Health System Corporation ("HHSC"); the Queen's Health Systems, Inc. ("Queen's"); Lyric Santiago, M.D. ("Santiago"); and Dan Brinkman ("Brinkman") (collectively, "Defendants") that have prevented him from working as a surgeon. Queen's seeks dismissal on statute of limitations grounds and for failure to state a claim. ECF No. 24. HHSC, Santiago, and Brinkman

(collectively, "HHSC Defendants") seek dismissal based on sovereign immunity, for failure to exhaust, on statute of limitations grounds, and for failure to state a claim.  ECF No. 41.

For the following reasons, the Court GRANTS Queen's Motion and GRANTS the HHSC Defendants' Motion.

## I.   BACKGROUND

### A.   Factual History

From August 2010 through March 2016, Plaintiff was enrolled in the National Capital Consortium Graduate Medical Education ("NCC GME") Urology Residency Program, which was overseen by the DOD.  ECF No. 2 ¶¶ 10–32. Plaintiff contends he — a Black American of Haitian descent — faced discriminatory treatment and was wrongfully terminated from that residency program.  *See id.* ¶¶ 10–40, 54.  Plaintiff's termination was upheld in May 2016; Plaintiff has neither received a "retroactive residency [completion] certificate" nor been reinstated into that residency program.  *Id.* ¶¶ 33, 37, 38.

Around June 2018, Plaintiff applied for clinical privileges at Queen's.  *Id.* ¶ 41.  He claims that Queen's rejected his request after receiving defamatory and discriminatory information from Curtis, the Designated Institutional Officer and Associate Dean at NCC GME.  *Id.* ¶¶ 4, 41.  Plaintiff then obtained a urology locum position and later, temporary staff privileges at Hilo Medical Center

("HMC").  *Id.* ¶ 41.  HMC is a facility within the east Hawaiʻi region, and is part of HHSC, a state health agency divided into five regional systems.  *See* ECF No. 41-1 at 10–11.  Plaintiff covered clinic operations as part of his responsibilities and was the sole urology provider at HMC from October 3 to 11, 2018, and November through December 2018.  ECF No. 2 ¶ 42.

According to Plaintiff, Santiago — who was a urologist and Chief of Division at HMC — recommended that he take a permanent position at HMC, but her attitude toward him changed when she received information from NCC GME.  *Id.* ¶¶ 6, 43.  On December 10, 2018, Brinkman, as HMC/HHSC's CEO, notified Plaintiff that his clinical privileges at HMC were terminated because he did not complete a urology residency.  *Id.* ¶ 44.  On March 18, 2019,[1] Plaintiff was notified of a peer review proceeding founded on four cases referred by Santiago.  *Id.* ¶ 45.

On April 22, 2019, HMC's Medical Executive Committee ("MEC") met to discuss the cases referred by Santiago.  *Id.* ¶ 48.  Plaintiff, who was in South Africa at the time, made multiple efforts to call into the meeting but was placed on hold without an answer.  *Id.*  Plaintiff avers that, as a result, the MEC failed to provide him with fair notice and a hearing before adjudicating his case and reporting him to

---

[1]  The Complaint says March 18, 2018, but based on the factual chronology, it appears that Plaintiff meant 2019.  ECF No. 2 ¶ 45.

the National Practitioner Data Bank ("NPDB") for "fil[ing] false reports or

falsifying records and ha[ving] substandard or inadequate skill level." *Id.* ¶ 49

(internal quotation marks omitted).  The Complaint indicates HMC made the report

in June 2019, *id.* ¶ 90(g)(x), but Plaintiff contends he only became aware of the

NPDB report in May 2020, *id.* ¶ 49.

Plaintiff alleges that the MEC reached unsubstantiated conclusions by

relying on descriptions of care and standards provided by Santiago and input from

NCC GME, without consulting any other urologists and by forming an ad hoc

committee of five physicians, none of whom were urologists, to review all of

Plaintiff's surgical cases during his tenure at HMC.  *Id.* ¶¶ 51, 52.  Plaintiff accuses

Defendants of a discriminatory and retaliatory motive, and treating him differently

than Caucasian physicians.  *Id.* ¶¶ 53, 54.  Specifically, Plaintiff claims that

Caucasian physicians were not reviewed or subjected to peer reviews for adverse

surgical outcomes or complications, nor were their contracts or clinical privileges

terminated without due process.  *Id.* ¶ 54.

## B.    Procedural History

Plaintiff commenced this action pro se on May 6, 2022.[2]  ECF Nos. 1, 2.  He

---

[2]  The Complaint is comprised of a form complaint and a document composed by
Plaintiff titled "Plaintiff's Original Complaint, Including for Declaratory and
Injunctive Relief."  ECF Nos. 1, 2.

asserts seven claims:  unlawful, capricious, and arbitrary residency termination and

retaliation against DOD (Count One); business disparagement and conspiracy to

commit same against DOD, HHSC, and Queen's (Count Two); tortious

interference with contract and prospective business relations and conspiracy to

commit same against Defendants generally, but no specific Defendant in particular

(Count Three); discrimination under 42 U.S.C. §§ 1983 and 1985(3) against

Defendants generally, but no specific Defendant in particular (Count Four);

underpayment and breach of contract against HHSC (Count Five); violation of the

Privacy Act and Whistleblower Protection Act against DOD, HHSC, and Queen's

(Count Six); and declaratory and injunctive relief (Count Seven).  *See* ECF No. 2.

Queen's and HHSC were served on May 23 and 26, 2022, respectively.

ECF Nos. 15, 16.  On July 11, 2022, Plaintiff filed a Request for Entry of Default.

ECF No. 17.  Magistrate Judge Kenneth J. Mansfield denied the request without

prejudice because it did not indicate against whom default was sought.  ECF No.

20.  Plaintiff then filed another Request for Entry of Default Against Queen's.

ECF No. 21.  Before action could be taken on the request, Queen's filed its Motion

to Dismiss Complaint.  ECF No. 24.  On August 5, 2022, counsel appeared on

Plaintiff's behalf.  ECF No. 31.  Plaintiff filed an Opposition to Queen's Motion on

August 12, 2022.[3]  ECF No. 36.  Queen's filed its Reply on August 25, 2022.  ECF No. 40.

On August 26, 2022, the HHSC Defendants filed their Motion to Dismiss Complaint.  ECF No. 41.  Plaintiff filed an Opposition to the HHSC Defendants' Motion on September 30, 2022.[4]  ECF No. 50.  The HHSC Defendants filed their Reply on October 7, 2022.  ECF No. 52.

The matter is stayed as to Plaintiff's claims against DOD and Curtis, pending the resolution of an administrative appeal.  ECF Nos. 44, 56, 57.

The Court elects to decide the Motions without a hearing pursuant to Local Rule 7.1(c).

---

[3]  Plaintiff's Opposition to Queen's Motion violates Rule 10.2(a)(2) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"), which requires the use of 14-point Times New Roman font.

[4]  Plaintiff's Opposition to the HHSC Defendants' Motion also uses a font size smaller than 14-point, and so also violates Local Rule 10.2(a)(2).  The HHSC Defendants further ask the Court to strike this Opposition because Plaintiff's overuse of single spacing throughout permitted him to file a longer brief than otherwise allowed.  *See* Local Rule 10.2(a)(4).  The Court declines to strike Plaintiff's Opposition; however, it agrees that Plaintiff's overuse of single spacing and block quotations without clear citations — in *both* Oppositions — has resulted in briefs that are confusing.  This case is in its early stages and so the Court will, at this time, only caution Plaintiff's counsel that a future failure to comply with the Local Rules may result in sanctions.  *See* Local Rule 11.1.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows an attack on the pleadings for failure to state a claim on which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).  A complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

A claim may be dismissed at this stage on the basis that it is untimely. However, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010) (citation omitted). In fact, "'[a] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

Because Plaintiff commenced this action pro se, the Court will construe his Complaint liberally. *See Erickson*, 551 U.S. at 94. If dismissal is ordered, he should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## III.   DISCUSSION

### A.   Queen's Motion To Dismiss

Queen's seeks dismissal under Rule 12(b)(6) for failure to state a claim. ECF No. 24 at 6–9; ECF No. 40 at 9–14. Queen's initially moved to dismiss all allegations concerning its denial of Plaintiff's application for privileges on statute of limitations grounds. However, Plaintiff's Opposition clarified that his allegations against Queen's are limited to its alleged conspiratorial conduct with

HHSC to provide defamatory information to NPDB, so Queen's instead argues Plaintiff has not adequately alleged its involvement or collusion.  ECF No. 36 at 7.

Plaintiff contends Queen's is in default and should therefore be prohibited from participating in this case.  *Id.* at 5–7.  He also objects that Queen's counsel did not engage in a pre-filing conference before filing its Motion.  *Id.* at 6.  The Court will address these preliminary matters before turning to the merits of Queen's Motion.

### 1.    Preliminary Matters

#### a.    Default

First, the Court rejects Plaintiff's argument that Queen's is in default and should be prohibited from participating in this case.  Queen's concedes it failed to file a responsive pleading within the 21-day deadline under Rule 12.[5]  *See* Fed. R. Civ. P. 12(a)(1)(A)(i); ECF No. 40 at 4.  Still, default never entered against Queen's and the Court declines to direct the entry of default *after* Queen's appeared and filed the present Motion.  *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk

---

[5]  Queen's deadline to respond to the Complaint was June 13, 2022; it filed its Motion a little over a month later, on July 15, 2022.  *See* ECF No. 15 (indicating Queen's was served on May 23, 2022); ECF No. 24 (Motion filed on July 15, 2022).

must enter the party's default."); *see also, e.g.*, *Thomas v. Kuo*, No. 1:16-cv-00524-EPG (PC), 2017 WL 3720752, at *1 (E.D. Cal. Aug. 29, 2017) ("[I]n light of the late answer, entry of default is inappropriate.").

Queen's further argues — and the Court agrees — that even if default *had entered*, there would be ample "good cause" to set it aside here.  *See* Fed. R. Civ. P. 55(c).  Courts consider three factors to determine whether "good cause" exists to set aside default:  (1) whether the party seeking to set aside default engaged in culpable conduct; (2) whether that party has a meritorious defense; and (3) whether the opposing party would be prejudiced.  *See United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).  Queen's contends — through a sworn declaration — that the Motion was late because of inadvertent oversight rather than any intentional conduct, *see* ECF No. 40-1 ¶ 3 (Nitao Decl.), such that the Court cannot find culpable conduct here.  As discussed in more detail below, Queen's also has a meritorious defense.  Finally, there is no evidence Plaintiff will be prejudiced by the Court considering Queen's untimely Motion, particularly given the early stage of these proceedings.

Indeed, based on Queen's argument and evidence offered in support of those factors, the Court construes Queen's filings as a request to extend the time to respond to the Complaint under Rule 6(b), and determines Queen's has shown "excusable neglect" such that the Court should consider its late-filed Motion.  Fed.

R. Civ. P. 6(b)(1)(B); *see Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) ("To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining:  (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." (citations omitted)).

### b.    Local Rule 7.8

Next, Plaintiff objects that Queen's did not conduct a pre-filing conference as required in *certain* cases under Local Rule 7.8.  At the time Queen's filed the Motion, however, Plaintiff was proceeding pro se; thus, Queen's had no obligation to conduct a pre-filing conference under the plain terms of Local Rule 7.8, which excepts "matters in which at least one party is pro se."

Having resolved these preliminary matters in Queen's favor, the Court will turn to the merits of Queen's Motion.

### 2.    Merits Of Queen's Motion To Dismiss

### a.    Count Two

Although somewhat unclear from the Complaint, as noted above, the Court interprets Plaintiff's Opposition as reflecting his intent to proceed against Queen's under Count Two based on a claim for conspiracy to defame.  *See* ECF No. 36 at 7 ("Plaintiff Baptiste is suing Queens because it conspired with Hilo M.C. to sent

[sic] a false defamatory report to the National Data Base two years later maliciously in 2020."); *see also id.* at 11 (same).

Under Hawaiʻi law, "the accepted definition of a conspiracy is a combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawaiʻi 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999) (brackets, internal quotation marks, and citations omitted), *superseded by statute on other grounds as stated in Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 113 Hawaiʻi 77, 148 P.3d 1179 (2006). Since "there can be no civil claim based upon a conspiracy alone," *Weinberg v. Mauch*, 78 Hawaiʻi 40, 49, 890 P.2d 277, 286 (1995) (internal quotation marks and citation omitted), a plaintiff must allege an underlying actionable claim, *see Ellis v. Crockett*, 51 Haw. 45, 57, 451 P.2d 814, 822–23 (1969).

Here, that underlying claim is defamation. *See Gold v. Harrison*, 88 Hawaiʻi 94, 100, 962 P.2d 353, 359 (1998) (stating elements of a defamation claim, including publication to a third party of a false and defamatory statement concerning another). Even presuming Plaintiff has stated an underlying

defamation claim against another entity, [6] he has failed to plausibly allege Queen's

conspired in any defamation.  While Plaintiff alleges specific facts regarding the

MEC sending a defamatory report to the NPDB and Queen's requesting that report,

he alleges in only conclusory fashion that the MEC made that false report (or

possibly other recommendations against Plaintiff) "acting collusively with . . .

Queen's" or "in cooperation with . . . Queen's."  ECF No. 2 ¶¶ 38, 49–50; *see also*

*id.* ¶¶ 61, 66.  Contrary to Plaintiff's arguments in Opposition — and as Queen's

notes — such "bare bones" allegations that merely recite the elements of a claim

are insufficient to state a plausible conspiracy claim against Queen's.  *See Iqbal*,

556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." (citation omitted)); *see*

*also Dowkin v. Honolulu Police Dep't*, No. CIV. 10-00087 SOM, 2012 WL

3012643, at *8 (D. Haw. July 23, 2012) ("In short, the nature of the conspiracy

---

[6] Based on the statements in the Opposition cited above, the Court presumes Plaintiff is *not* bringing a defamation claim against Queen's.  Regardless, the portions of the Complaint Plaintiff relies on in arguing against dismissal do not allege *Queen's* made any defamatory statement to a third party.  *See* ECF No. 36 at 7, 12 (relying on paragraphs 49 and 50).  At most, those portions of the Complaint allege the MEC made false statements in a report to the NPDB and that Queen's then requested that report.  *See* ECF No. 2 ¶¶ 49–50.  In his Opposition, Plaintiff *argues* that Queen's "disclosed defamatory information to Hilo Medical that supported or contributed to Hilo Medical Center's improper and malicious report to the National Provider Data Bank . . . wherein Dr. Baptiste [sic] clinical competence was falsely but deliberately mischaracterized."  ECF No. 36 at 16.  But Plaintiff does not point to where in the Complaint such facts are alleged.

must be clearly delineated so that each Defendant's actual participation in the alleged conspiracy . . . may be examined.").

Nor do Plaintiff's other, more specific allegations lead to the reasonable inference that Queen's conspired with other entities to make or send the report. The fact that Queen's requested the report in 2020 alone does not support such an inference. Plaintiff argues that this fact, when combined with the fact that Queen's did *not* query the NPDB when reviewing his application in 2018, "lends cred[e]nce to" his allegations that Queen's conspired to defame him. ECF No. 36 at 11. But Plaintiff does not cite where in the Complaint he has actually alleged that fact about Queen's in 2018. *Compare, e.g.*, ECF No. 2 ¶ 41 (allegations regarding his application to Queen's, none of which reference Queen's failure to query the NPDB), *with* ECF No. 24 at 7–8 (Queen's Motion suggesting it did query the NPDB in 2018).

In the same vein, while Plaintiff *argues* that Queen's forced HMC to send the report, *see* ECF No. 36 at 7, nothing in the Complaint supports that contention. This is so even though Plaintiff's Opposition contends Plaintiff "has stated," at paragraph 50, that:

> Defendants Queens, Hilo MC and the Government Defendants communicated, joined together and conspired to send slanderous and false reports, which had been appealed and contradicted to the National Data Base, even though the NCC itself had never transmitted this [sic] false slanderous statements to the National Data Base itself.

14

ECF No. 36 at 13 (emphasis omitted).  Such allegations do not appear at paragraph 50 — nor anywhere else in the Complaint.  Plaintiff thus cannot rely on them to defeat Queen's Motion here, and the Court cautions counsel to be more careful about representations made to the Court.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the [opposition], however, are irrelevant for Rule 12(b)(6) purposes.  In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (citations omitted)).

Finally, the Court is not persuaded by Plaintiff's argument that discovery into the Defendants' communications will permit him to state a plausible conspiracy claim.  *See* ECF No. 36 at 20.  Put simply, "plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it."  *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (citation and footnote omitted).

Based on the foregoing, Count Two is DISMISSED as to Queen's, with leave to amend.

Briefly, because Plaintiff's Opposition makes passing reference to other conspiracy claims — under 42 U.S.C. §§ 1983 and 1985(3) — the Court notes that it does *not* read the Complaint as bringing Count Four (alleging violations of those provisions) against Queen's.  *See* ECF No. 2 ¶¶ 75–79.  To the extent Plaintiff

15

intended to bring Count Four against Queen's, the Court would dismiss it because the Complaint fails to give fair notice of the basis on which it is brought to enable Queen's to defend itself. *See AE v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). In addition, to the extent Plaintiff intended to bring a § 1983 claim against Queen's, a private entity, based on the theory that it conspired with state actors (*i.e.*, the HHSC Defendants), any such claim fails for the reasons stated above regarding Plaintiff's mere conclusory allegations regarding the existence of a conspiracy. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (noting private actor who conspires with state actors may be held liable under § 1983); *see also Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (noting plaintiff's conclusory allegations of conspiracy "do not support a claim for violation of his constitutional rights under § 1983" (citations omitted)). Any claim under § 1985(3) against Queen's would fail for similar reasons. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient." (citation omitted)); *see also Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (holding that "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations" (citation omitted)). Should Plaintiff wish to bring such a claim against Queen's, he must therefore seek separate leave to do so.

### b.   Count Three

As noted above, because Count Three makes no mention of Queen's (or any other Defendant by name), it is unclear whether Plaintiff also attempts to bring a claim against Queen's for conspiracy to commit the tort of interference with contract and prospective business relations. *See* ECF No. 2 ¶¶ 70–74; *but see* ECF No. 36 at 15. To the extent Plaintiff is relying on the other allegations in the Complaint referencing Queen's, discussed above, they similarly fail to plausibly allege Queen's conspired to interfere with a business opportunity and instead offer only the legal conclusion that Queen's engaged in a conspiracy. For that reason, Count Three as to Queen's is DISMISSED with leave to amend.[7]

### c.   Count Six

Queen's also moves to dismiss Plaintiff's claim against it for violation of privacy rights and whistle blower (Count 6), which appears to allege that Queen's violated the Privacy Act, 5 U.S.C. § 552a, when it "shared and exchanged" certain "privileged information" about him.[8] ECF No. 2 ¶ 83. First, the Privacy Act is

---

[7]  While Plaintiff's Opposition also makes passing reference to his claim for underpayment and breach of contract (Count Five), *see* ECF No. 36 at 18, the Complaint makes clear that claim is brought only against HHSC, and so the Court does not address it as to Queen's. *See* ECF No. 2 ¶¶ 80–82.

[8]  The portion of Count Six addressing the Whistleblower Protection Act does not involve Queen's. *See* ECF No. 2 ¶ 84. Nor does Plaintiff's Opposition suggest he is pressing that aspect of Count Six against Queen's. The Court therefore focuses

(continued . . .)

inapplicable to Queen's.  "The Privacy Act governs the disclosure of, access to, and amendment of records on individuals that are maintained by federal agencies." *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1138 (9th Cir. 2008) (citation omitted).  Under the Privacy Act, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."  5 U.S.C. § 552a(b). While the  Privacy Act governs release of information by federal agencies, it does not apply to disclosure of records by a private entity, like Queen's.  *See Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985) ("The private right of civil action created by the [Privacy] Act is specifically limited to actions against agencies of the United States Government.  The civil remedy provisions of the statute do not apply against private individuals, state agencies, private entities, or state and local officials." (citations omitted)); *see also Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328, 1340 (9th Cir. 1987) ("The agency is the only proper party to such a suit; the civil remedy provisions [of the Privacy Act] do not apply to individual defendants." (citations omitted)).

---

(. . . continued)

only on the privacy aspect of Count Six.  Regardless, any claim against Queen's under the Whistleblower Protection Act would fail as a matter of law.  *See infra* note 9.

In addition to this issue, the Court notes that Plaintiff's Complaint alleges only that Queen's "shared and exchanged his privileged information without [his] consent/authorization of release[.]" ECF No. 2 ¶ 83. Nowhere else in the Complaint does Plaintiff offer any additional facts regarding what information Queen's shared or with whom. Again, Plaintiff's Opposition attempts to add those missing facts — arguing Queen's may have communicated Plaintiff's "application for credentials or any other personal information to Hilo Medical Center." ECF No. 36 at 12. And as before, the Court will consider only those allegations contained within the Complaint.

In his Opposition, Plaintiff seems to contend he brought a different type of privacy claim against Queen's, namely that Queen's violated his rights under the Health Insurance Portability and Accountability Act ("HIPAA"). *See id.* at 12 (erroneously referring to "HIPPA"). While the Complaint does mention HIPAA twice, it does not allege *Queen's* violated *Plaintiff's* rights under HIPAA. *See* ECF No. 2 ¶ 25 (alleging *other individuals or entities* violated *patients'* HIPAA rights). Nor does it appear that any such claim would be viable, in any event. *See Garmon v. County of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) ("HIPAA itself provides no private right of action." (internal quotation marks and citation omitted)).

19

Based on the foregoing, and because amendment appears futile based on the type of claim Plaintiff has sought to bring here, the Court DISMISSES Count Six against Queen's without leave to amend.

### d.    Count Seven

Because there are no remaining claims against Queen's, the Court also DISMISSES Count Seven against Queen's, which sought a declaration that it conspired against Plaintiff.  *See* ECF No. 2 ¶ 85(x); *see also Yoshikawa v. City & County of Honolulu*, CIVIL NO. 18-00162 JAO-RT, 2021 WL 54363, at *15 (D. Haw. Jan. 6, 2021) ("[N]either declaratory relief nor injunctive relief are stand-alone claims as they are duplicative of Plaintiff's other claims; both are remedies that may be available if Plaintiff prevails on one or more of his claims." (citation omitted)).  Accordingly, the Court DISMISSES Count Seven without leave to amend.  *See Yoshikawa*, 2021 WL 54363, at *16.

### B.    HHSC Defendants' Motion To Dismiss

As noted above, the HHSC Defendants also move to dismiss the claims against them on a number of grounds.  The Court will first address the extent to which the Eleventh Amendment bars certain claims against the HHSC Defendants before turning to the merits of the claims that are not barred on that basis.

### 1. Eleventh Amendment

The HHSC Defendants move to dismiss all claims against them on the basis of the Eleventh Amendment. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); *see also Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) ("It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court." (citation and internal quotation marks omitted)).

### a. Claims Against HHSC

Plaintiff does not dispute that HHSC is an arm of the State that would otherwise be entitled to Eleventh Amendment immunity. *See* Hawaiʻi Revised Statutes ("HRS") §§ 323F-2(a), 323F-7(c)(11); *see also*, *e.g.*, *Garcia v. Haw. Health Sys. Corp.*, Civil No. 14-00044 LEK-KS, 2014 WL 3672119, at *3 (D. Haw. July 23, 2014); *Bates v. Haw. Health Sys. Corp.*, CIVIL NO. 13-00459 JMS-RLP, 2014 WL 12768314, at *1 (D. Haw. Mar. 21, 2014). Instead, he argues HHSC has waived that immunity by accepting federal funds. Although one exception to sovereign immunity arises when Congress abrogates the States' sovereign immunity pursuant to a valid grant of constitutional authority, *see*

21

*Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817–18 (9th Cir. 2001),

Plaintiff has not demonstrated that exception applies here. Instead, he relies on

cases noting that, under certain statutes (none of which apply here), receipt of

federal funds constitutes a waiver of sovereign immunity. *See* ECF No. 50 at 6–7

(citing, *e.g.*, *Clark v. California*, 123 F.3d 1267 (9th Cir. 1997)); *Clark*, 123 F.3d at

1271 (addressing the Rehabilitation Act)). More relevant here, Congress has *not*

abrogated immunity for 42 U.S.C. §§ 1983 and 1985, pursuant to which Plaintiff

brings certain federal claims. *See Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198,

201 (9th Cir. 1988). Nor has Plaintiff argued Congress abrogated immunity for the

other federal statutes he relies on, the Privacy Act or the Whistleblower Protection

Act.[9] *See, e.g.*, *Tapia v. Wash., Dep't of Soc. & Health Servs.*, No. CV-09-5100-

EFS, 2010 WL 1257673, at *2 (E.D. Wash. Mar. 23, 2010) (ruling federal-fund

exception to sovereign immunity did not apply where plaintiff failed to identify

federal statute waiving that immunity by accepting federal funds).

    As to state law tort claims, the State of Hawai'i has "waive[d] its immunity

for liability for the torts of its employees and shall be liable in the same manner

---

[9] In any event, those claims against the HHSC Defendants (under Count Six) fail
as a matter of law. As discussed above, Plaintiff cannot state a claim under the
Privacy Act against the HHSC Defendants because none are a federal agency. The
same is true of Plaintiff's claim under the Whistleblower Protection Act, which the
HHSC Defendants contend — and Plaintiff does not dispute — applies only to
certain employees of the *federal* government. *See* 5 U.S.C. §§ 2302(b)(8)–(9),
2105(a)(1).

and to the same extent as a private individual under like circumstances."  HRS §

662-2.  There are, however, exceptions to that waiver — which the HHSC

Defendants argue include Plaintiff's claims here.  *See* HRS § 662-15(4) (excepting

claims arising out of "libel, slander, misrepresentation, deceit, or interference with

contract rights").  More importantly, though, "this district court has recognized that

the State Tort Claims Act waiver of sovereign immunity only applies to actions

brought in state court."  *Eng v. Dep't of Pub. Safety*, CIV. NO. 18-00282 LEK-

KJM, 2020 WL 981048, at *7 (D. Haw. Feb. 28, 2020) (citing cases).  Similarly,

although Hawaiʻi has consented to being sued for monetary relief for violations of

contracts entered into with the State, *see* HRS § 661-1, that does not extend

consent to suit in federal court, *see Cislo v. Fuchigami*, CIVIL NO. 17-00487

SOM/KJM, 2017 WL 6559753, at *6 (D. Haw. Dec. 22, 2017).

Based on the foregoing, the Court concludes that all claims against HHSC

(Counts Two, Three, Four, Five, Six, and Seven) are barred under the Eleventh

Amendment, and therefore DISMISSES those claims without leave to amend as to

HHSC because it is clear Plaintiff cannot cure the defects in those claims.

### b.    Official Capacity Claims Against Santiago And Brinkman

To the extent Plaintiff has brought claims against Santiago and Brinkman in

their official capacities for monetary or retrospective relief, those claims (Counts

Two, Three, Four, Five, Six, and Seven) are also DISMISSED without leave to

23

amend on the basis of sovereign immunity for the same reasons as stated above with regard to HHSC.  *See Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992), *as amended* (Oct. 9, 1992); *see also Wheeler v. Hilo Med. Ctr., Inc.*, Civil No. 09-00533 JMS/KSC, 2010 WL 3422720, at *3 (D. Haw. Aug. 30, 2010) (dismissing claims against HMC officers sued in their official capacity as barred by the Eleventh Amendment).  This includes all federal and state law claims against Defendants Santiago and Brinkman in their official capacities for monetary or retrospective relief, based on the Court's conclusion that immunity as to those claims has not been waived in federal court.

However, Plaintiff may bring a viable claim against Santiago and Brinkman in their official capacities that would *not* be barred by sovereign immunity under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), *i.e.*, provided Plaintiff is "seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law."[10]  *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,

---

[10]  Here, because *Ex parte Young* is not invoked in the Complaint, the Court presumes the only potentially viable basis for such relief would be under Count Four (brought under §§ 1983 and 1985) because, as discussed throughout, the only other federal claim Plaintiff brings against Santiago and Brinkman (Count Six) fails as a matter of law.  *See Mendoza v. Strickler*, 51 F.4th 346, 352–53 (9th Cir. 2022) (noting a state official in his or her official capacity, when sued for prospective injunctive relief, is a "person" under § 1983); *but see Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) (noting plaintiff suing state official for prospective relief does not necessarily need to proceed under a statutory cause of action, like § 1983, and instead may rely on the "judge-made cause of action recognized in *Ex parte Young*" (citation omitted)).

24

824 F.3d 858, 865 (9th Cir. 2016) (citations omitted).  That said, the Ninth Circuit

has cautioned:

> For *Ex parte Young* to apply, a plaintiff must point to
> threatened or ongoing unlawful conduct by a particular
> governmental officer.  The doctrine does not allow a plaintiff to
> circumvent sovereign immunity by naming some arbitrarily
> chosen governmental officer or an officer with only general
> responsibility for governmental policy.  *Ex parte Young*, 209
> U.S. at 157, 28 S. Ct. 441 ("In making an officer of the state a
> party defendant in a suit to enjoin the enforcement of an act
> alleged to be unconstitutional, it is plain that such officer must
> have some connection with the enforcement of the act, or else it
> is merely making him a party as a representative of the state, and
> thereby attempting to make the state a party.").

*Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 994 (9th Cir. 2020).

Based on the allegations in the Complaint, Plaintiff has failed to do that here by

naming Santiago and Brinkman.

In his Opposition, Plaintiff points to the NPDB report with alleged

falsehoods as the ongoing violation for which he seeks prospective relief.  *See* ECF

No. 50 at 16 (invoking *Ex parte Young* by referencing "the report [] replete with

falsehoods"); *see also id.* at 7 ("Plaintiff Baptiste has standing to request Injunctive

relief from this harmful false slanderous statement issued by these Defendants[.]");

*id.* at 30 (referencing "the false, slanderous, discriminatory statement [] sent to the

National Medical Data Base").  Even assuming the existence of this report

constitutes an ongoing violation of a federal right, his Complaint does not

sufficiently allege either Santiago or Brinkman's involvement with the

dissemination or ongoing existence of that report; to the contrary, the Complaint alleges the *MEC* made the report and asks the Court to order *HMC* to void the report.  ECF No. 2 ¶¶ 49–50, 85(vii), (ix), 90(g)(viii), (x); *see also Brown v. Med. Coll. of Ohio*, 79 F. Supp. 2d 840, 844 (N.D. Ohio 1999) (noting that proper defendants for claim for injunctive relief were "the party responsible for making the report to the NPDB" and the party who "has the authority to act on [the medical school's] behalf in reporting matters to the NPDB").

More importantly for this type of relief, though, Plaintiff has not alleged facts from which the Court can infer that either individual would be responsible for carrying out what he requests, *i.e.*, voiding the NPDB report.  *See Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012) (identifying proper defendant on claim for prospective injunctive relief as person who "would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [plaintiff's] claims" (citations omitted)); *see also Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) ("This connection must be fairly direct; a . . . general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." (internal quotation marks and citation omitted)).  Plaintiff's claim for prospective injunctive relief thus fails because Plaintiff has not sufficiently alleged

a connection between the individuals named and the prospective injunctive relief he seeks.

Such defects may be curable by amendment; however, the HHSC Defendants raise a separate issue with Plaintiff's request for *this type* of injunctive relief — namely that exhaustion of administrative remedies is a prerequisite to any prospective injunctive relief that would amount to a court ordering the revision, correction, or removal of an NPDB report.

Relevant to that argument, the NPDB was established by the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11101.  Federal regulations promulgated under the HCQIA provide explicit procedures for, *e.g.*, disputing a report or requesting a review of a disputed report.  *See* 45 C.F.R. § 60.21.  The Secretary of Health and Human Services is tasked with promulgating these "procedures in the case of disputed accuracy of the information" reported to the NPDB.  42 U.S.C. §§ 11136, 11151(12).  If a practitioner is successful in challenging the information submitted to the NPDB, the Secretary must correct the disputed information and give notice of the revisions to those parties who received a report containing the incorrect information.  *See* 45 C.F.R. § 60.21(c).

The HHSC Defendants acknowledge these administrative remedies are not mandatory.  *See id.* § 60.21(a) ("Who *may* dispute the NPDB information." (emphasis added)).  Still, they note that a court, in its judicial discretion, may

27

require exhaustion of administrative remedies even if Congress has not done so.

*See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (noting that, even when

discretionary, courts are to fashion the "exhaustion principles in a manner

consistent with congressional intent and any applicable statutory scheme" (citation

omitted)), *superseded by statute on other grounds as recognized in Porter v.*

*Nussle*, 534 U.S. 516 (2002).  The HHSC Defendants cite numerous examples

where a district court has concluded, in its discretion, that exhaustion of

administrative remedies is required before a plaintiff may seek prospective

injunctive relief related to the correction of an NPDB report.  *See, e.g.*, *Gonino v.*

*Priv. Health Care Sys., Inc.*, No. CIV.A. 3:04-CV-1940G, 2004 WL 2583625, at

*2 (N.D. Tex. Nov. 12, 2004) ("Several federal courts have held that a plaintiff

seeking injunctive relief similar to that requested by [plaintiff] in this case [to

revise information submitted to the NPDB] must first exhaust the administrative

remedies provided by the HCQIA before a court may exercise jurisdiction over a

claim for injunctive relief." (citing cases)); *Brown*, 79 F. Supp. 2d at 845

("Allowing a physician to bypass the administrative procedure simply by choosing

to sue the reporting entity could 'induce frequent and deliberative flouting of

administrative processes, thereby undermining the scheme of decisionmaking that

Congress has created' under the HCQIA." (quoting *McGee v. United States*, 402

U.S. 479, 484 (1971))); *Bigman v. Med. Liab. Mut. Ins. Co.*, No. 95 CIV.

28

1733(PKL), 1996 WL 79330, at *4 (S.D.N.Y. Feb. 22, 1996) ("Allowing plaintiff to bypass this procedure simply by choosing to sue the reporting entity directly would be contrary to the obvious intent of the drafters of the governing regulations.").

Plaintiff does not explicitly dispute that administrative exhaustion should apply to his request for injunctive relief.  For example, he has not argued that his individual interests weigh against the Court, in its discretion, requiring exhaustion here.  *See McCarthy*, 503 U.S. at 146–48 (noting individual interests may weigh against requiring discretionary exhaustion where (1) "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; (2) the agency lacks power to grant effective relief; and (3) the agency is "shown to be biased or has otherwise predetermined the issue before it" (citations omitted)).  Instead, he appears to argue only that exhaustion is not required for certain of his claims for *damages*.  *See* ECF No. 50 at 10–11, 20.  Indeed, one of the cases Plaintiff relies on itself acknowledges that district courts "have required exhaustion as a prerequisite to a request for *injunctive* relief, through which a court would either order the revision of information supplied to the Data Bank, or enjoin a party from filing such a report."  *Ritten v. Lapeer Reg'l Med. Ctr.*, 611 F. Supp. 2d 696, 734 (E.D. Mich. 2009) (citations omitted).  The court in *Ritten* concluded exhaustion was not required where the plaintiff was not

seeking the correction of a report "as achievable through the administrative process" but instead redress from harm he had already suffered from a report. *Id.*

Here, though, in the context of Plaintiff's request for prospective injunctive relief against Santiago and Brinkman in their official capacities, the Court is more persuaded by the authority cited by the HHSC Defendants concluding that exhaustion of administrative remedies is required before Plaintiff make seek an injunction from the Court to void or correct the NPDB report.  Because Plaintiff's Complaint does not indicate he has yet exhausted these remedies, the Court also DISMISSES Count Four against Santiago and Brinkman in their official capacities, but the dismissal is with leave to amend to the extent Plaintiff seeks prospective relief and has exhausted his remedies.

The remaining claims, addressed below, thus relate only to those brought against Santiago and Brinkman in their individual capacities — to the extent Plaintiff has sued each in their individual capacity.

### 2.  Individual Capacity Claims Against Santiago And Brinkman

#### a.  Count Three

As noted above, Plaintiff has limited his claim for interference with contract and prospective business relations and conspiracy to commit that tort (Count Three) to the NPDB report he discovered in 2020.  In other words, that count is not based on Santiago referring cases for peer review, Brinkman informing Plaintiff

30

his privileges at HMC had been terminated, or the peer review process or MEC phone conference — all of which occurred more than two years before Plaintiff filed this action.  *See* HRS §§ 657-4, 657-7 (providing 2-year statute of limitations); *see also Roberts v. City & County of Honolulu*, CV. No. 07-00391 DAE-KSC, 2008 WL 563475, at *4 (D. Haw. Mar. 3, 2008); ECF No. 50 at 11–12. However, as also noted above, Plaintiff's Complaint does not contain any specific allegations regarding either Brinkman or Santiago's involvement in the drafting or dissemination of that report.  And as also noted above, Count Three is not brought against any specific Defendant and contains no specific reference to Brinkman or Santiago.  *See* ECF No. 2 ¶¶ 70–74.

Assuming Count Three has been brought against Brinkman and Santiago in their individual capacities, it is too vague to state a plausible claim and fails to put these Defendants on notice of what they are being sued for and on what theory. *See Twombly*, 550 U.S. at 555 (noting that the requirement set forth in Rule 8(a)(2) is intended to give a defendant fair notice of what the claim is and the grounds on which it rests); *Starr*, 652 F.3d at 1216 ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."); *see also Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp. 3d  993, 1001 (N.D. Cal. 2015) ("To state a claim against

31

state officials in their individual capacities, the complaint must set forth allegations from which the court can infer that the individuals acted in their individual capacities." (citation omitted)).

As he did in opposing Queen's Motion, Plaintiff attempts to add additional factual allegations in opposing the HHSC Defendants' Motion — here, arguing "Mr. Brinkman is the executive in charge and should have known" about the NPDB report or "stopped" the report from being made, and that "a jury could conclude that Dr. Santiago . . . knew o[r] should have known that the report they sent to the NPDB was false" and that Santiago sent a "slanderous letter" to the NPDB.  ECF No. 50 at 8, 13, 23–24.  But Plaintiff does not cite where these allegations are made in the Complaint.[11]  Because Plaintiff has failed to make clear on what basis Count Three is brought against Brinkman or Santiago, the Court DISMISSES Count Three against these Defendants in their individual capacities, but will allow leave to amend to address these deficiencies.

---

[11] The only substantive allegation regarding Brinkman claims that he informed Plaintiff, in December 2018, that his clinical privileges were being terminated because he had not completed a residency in urology.  *See* ECF No. 2 ¶ 44.  While the Complaint contains more allegations regarding Santiago, they still relate to Santiago reviewing his clinical encounters and referring cases for peer review, as well as the MEC's reliance on her statements — and did not regard any involvement in creating or sending the report nor any ability to prevent the report. *See id.* ¶¶ 43–53.  Elsewhere Plaintiff concedes it was the MEC who made the referral to the NPDB, and that the alleged false report "was made by the Hilo/HHS Medical Executive Committee ('MEC') acting collusively with NCC GME and Queen's."  *Id.* ¶¶ 49, 50.

### b.    Count Four

Under Count Four, Plaintiff brings claims for discrimination under 42

U.S.C. §§ 1983 and 1985(3).  As with the claims discussed above, although his

Complaint complains about HHSC terminating his privileges in 2018, and a

telephone conference with the MEC that he was unable to connect to in 2019, in

response to the HHSC Defendants' arguments that any claim under §§ 1983 and

1985 on those grounds would be untimely (given the 2-year statute of limitations),

Plaintiff's Opposition clarifies that Count Four is premised, as well, on the NPDB

report that he did not discover until 2020.  *See* ECF No. 50 at 10–12; *see also id.* at

20–21 ("Dr. Baptiste first became aware that HHSC defendants had sent a report

slanderously claiming that he 'filed false reports and demonstrates substandard or

inadequate skill' when he did a self check of his name in the National Physicians

Data base on May 6, 2020, and found the slanderous report with false information

in it.  It is the discriminatory action he did not learn of until May 6, 2020 that he is

complaining of now.").[12]

Addressing Plaintiff's claim under § 1983 first, "[t]o establish § 1983

liability, a plaintiff must show both (1) deprivation of a right secured by the

---

[12]  Based on these representations, the Court does not construe Plaintiff's
Complaint or arguments in his Opposition as contending that the termination or
hearing process before the MEC are part of this suit.

Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (footnote and citations omitted).  "Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citation omitted).  Again, though, Plaintiff has not pointed to where in the Complaint he alleges either Brinkman or Santiago's personal involvement in the creation or dissemination of the NPDB report.  While supervisors can be held personally liable under § 1983 in certain circumstances, the Complaint also does not contain any facts from which the Court could infer that either individual is a supervisor of those personally involved, or could otherwise be held liable in a supervisory capacity.  *See Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) ("Thus, a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." (internal quotation marks and citations omitted)).  To the contrary, Plaintiff alleges HHSC (and other entities named) are liable for the acts of individuals like Brinkman and Santiago, *see* ECF No. 2 ¶ 60, but not that Brinkman and Santiago are liable for the acts of *other* individuals.  Because Plaintiff has not alleged how either Santiago or

34

Brinkman, "through the official's own individual actions" violated his rights under the Constitution or federal law with regard to the NPDB report, Plaintiff has failed to state a cognizable claim under § 1983. *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also Chudacoff*, 649 F.3d at 1151 ("In the absence of evidence of her personal participation in the constitutional deprivation, [defendant's] mere non-voting membership in the MEC is insufficient to show that she was an 'integral participant' in the deprivation of [plaintiff's] rights, as is required to establish § 1983 liability." (citation omitted)).

Turning next to Plaintiff's claim under § 1985(3), to state a claim for a violation of that statute, Plaintiff must allege four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983). A plaintiff alleging a conspiracy to violate civil rights must "state specific facts to support the existence of the claimed conspiracy." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted). Plaintiff has not, however, alleged any specific facts to "show that the

35

defendants conspired — that is, reached an agreement — with one another."

*Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1868 (2017) (citation omitted).

While Plaintiff uses phrases like "conspiracy" and "colluded," he does not provide

any specific facts showing that *any* Defendant — let alone these individuals —

were party to any agreement to violate his rights with regard to the NPDB report at

issue.  *See* ECF No. 2 ¶¶ 50, 61, 66 (alleging, in only conclusory fashion, that

certain other Defendants, *e.g.*, Queen's, HHSC itself, and NCC GME conspired or

colluded against him in sending the NPDB report).  Nor does Plaintiff argue that

any of the more specific factual allegations involving Santiago and Brinkman is

sufficient to infer such an agreement was reached.

      Based on the foregoing, the Court DISMISSES Count Four against Santiago

and Brinkman in their individual capacities with leave to amend.[13]

          **c.**    **Count Five**

      Under Count Five, Plaintiff brings a claim for breach of contract — although

only against HHSC rather than either Brinkman or Santiago, individually.

Plaintiff's Opposition suggests that he is *not* bringing a breach of contract claim

---

[13]  The Court declines to address, at this time, the other grounds on which the
HHSC Defendants move to dismiss Count Four because the briefing does not
adequately develop:  whether Plaintiff's allegations regarding discrimination in,
*e.g.*, HHSC's peer review process, is sufficient to allege discrimination as to the
NPDB report, *see, e.g.*, ECF No. 2 ¶ 54, and whether the allegation that the NPDB
report claimed Plaintiff filed false reports and falsified records could implicate a
liberty interest.

against any of the HHSC Defendants — but instead once more complaining about the alleged false NPDB report.  *See* ECF No. 50 at 29.  Again, Count Five contains no specific reference to either Brinkman or Santiago.  *See* ECF No. 2 ¶¶ 80–82.  And, in fact, Plaintiff's Opposition does not argue that submitting a false NPDB report constitutes a breach of contract; instead, he contends it violates the Sherman Antitrust Act.  *See* ECF No. 50 at 29.  The Court will not assess the viability of such a claim, which was not included in Plaintiff's Complaint.  If Plaintiff wishes to bring such a claim, he must seek separate leave to do so.  Based on the lack of specific allegations regarding Brinkman and Santiago's breach of any contract, or involvement in the NPDB report, and based on the representations in Plaintiff's Opposition, the Court DISMISSES Count Five to the extent it is brought against Brinkman or Santiago in their individual capacities, without leave to amend.

### d.    Count Six

Even assuming Plaintiff has brought Count 6 against Brinkman or Santiago in their individual capacities for violating the Privacy Act or the Whistleblower Protection Act, any such claim would still fail as a matter of law for the reasons discussed above, to wit:  neither Defendant is a federal agency or employee.  *See Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999); 5 U.S.C. §§ 2302(b)(8)–(9), 2105(a)(1).  Plaintiff does not contest that these claims are fatally deficient as to Brinkman and Santiago for these reasons, and so the Court

DISMISSES Count 6 against Brinkman and Santiago in their individual capacities without leave to amend.

### e. Count Seven

Because all claims against Santiago and Brinkman have been dismissed, the Court also DISMISSES Count Seven (for declaratory and injunctive relief) as to these Defendants, without leave to amend. *See Monet v. Hawaii*, No. CIV. NO. 21-00368 LEK-KJM, 2022 WL 105194, at *7 (D. Haw. Jan. 11, 2022) (noting such remedies are not standalone claims). "In other words, Plaintiff's amended complaint must not include a separate count for injunctive [and declaratory] relief, but Plaintiff may still ask for injunctive [or declaratory] relief among the remedies he seeks for the other counts that he has leave to include in his amended complaint." *Id.* (emphasis omitted).

### IV. CONCLUSION

For the reasons stated above, the Court GRANTS Queen's Motion to Dismiss, ECF No. 24, as follows:

- Counts Two and Three are DISMISSED WITH LEAVE TO AMEND as to Queen's;

- Counts Six and Seven are DISMISSED WITHOUT LEAVE TO AMEND as to Queen's.

For the reasons stated above, the Court GRANTS the HHSC Defendants' Motion to Dismiss, ECF No. 41, as follows:

- Counts Two, Three, Four, Five, Six, and Seven are DISMISSED WITHOUT LEAVE TO AMEND as to HHSC;

- Counts Three, Four, Five, Six, and Seven are DISMISSED WITHOUT LEAVE TO AMEND as to Santiago and Brinkman in their official capacities, except that Count Four is DISMISSED WITH LEAVE TO AMEND to the extent Plaintiff is seeking prospective relief and has exhausted administrative remedies;

- Counts Three and Four are DISMISSED WITH LEAVE TO AMEND as to Santiago and Brinkman in their individual capacities; and

- Counts Fix, Six, and Seven are DISMISSED WITHOUT LEAVE TO AMEND as to Santiago and Brinkman in their individual capacities.

Thus, the only remaining claims in the Complaint are those against the DOD and Curtis; although, as noted above, this action is stayed as to them.

If Plaintiff wishes to file an amended complaint addressing the deficiencies noted above, he must file an amended complaint by January 3, 2023.  No new claims or parties may be added without obtaining leave of court.

39

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, December 12, 2022.



Jill A. Otake
United States District Judge

CIVIL NO. 22-00210 JAO-KJM, *Baptiste v. Dep't of Defense, et al.*; Order (1) Granting the Queen's Health Systems, Inc.'s Motion to Dismiss Complaint and (2) Granting Hawaii Health System Corporation, Lyric Santiago, M.D., and Dan Brinkman's Motion to Dismiss Complaint